560 A.2d 288

**William K. PANNACCI, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 7, 1989.

Decided June 15, 1989.

Michael I. Levin, Frank P. Clark, Cleckner & Fearen, Harrisburg, for petitioner.

John Kane, Chief Counsel, James S. Marshall, Asst. Counsel, Barbara G. Raup, Chief Counsel, Harrisburg, for respondent.

Before DOYLE and SMITH, (P.), JJ., and KALISH, Senior Judge.

DOYLE, Judge.

This is an appeal by William K. Pannacci (Pannacci) from an order of the State Civil Service Commission (Commission) dismissing Pannacci's appeal from his nonselection for promotion to Chief Pharmacist at the Clarks Summit State Hospital operated by the Department of Public Welfare (Appointing Authority).

Pannacci was employed as a Pharmacist I, regular status, by the Appointing Authority. On January 9, 1985, the Appointing Authority posted a notice soliciting candidates for the position of Chief Pharmacist at the Hospital. The notice, in addition to describing the criteria for the job, contained a general statement that informed the reader that several optional methods to fill the position were available, including, *inter alia*, qualification by being on the civil service list or promotion without examination.

In addition, under a section of the notice entitled *How to Apply*, it stated: "Interested and qualified applicants must

submit ... [certain information] under the 501 Promotion Without Examination Criteria." Thus, the notice did not specifically advise applicants to take a civil service examination or that taking such an examination would be a necessary prerequisite to being selected for the position. Two individuals applied for the vacant position, Pannacci, and Sandra Yadouga (Yadouga), who was also a Pharmacist I, and Pannacci's co-worker. Pannacci applied through the promotion without examination option. Yadouga applied based upon her standing on the civil service promotion list. By letter dated March 8, 1985, Pannacci was advised that the position to which he sought promotion was "being filled by promotion with examination and is being granted to another applicant."

 Pannacci timely appealed his nonselection for the promotion, alleging discrimination.[1] However, he failed to state on his appeal form the specific reasons for his allegation of discrimination despite clear directions on the form that such failure could result in dismissal of the appeal. *See* 4 Pa.Code § 105.12(b) and (c) (stating the facts which should appear on an appeal request form where there is an allegation of discrimination and indicating possible dismissal of the actions where sufficient facts are not alleged).

Concomitant with his appeal from nonselection was Pannacci's contact with the Executive Director of the Commission requesting that he authorize an investigation of certain activities at the Hospital. The activities which were the subject of this request pertained to the selection process for the Chief Pharmacist position as well as other discriminatory treatment allegedly perpetrated against Pannacci because of his utilization of the employee grievance process on numerous occasions. Pannacci set forth the details of his discrimination claims in two letters to the Executive Director dated April 1 and April 5, 1985. The Executive

---

1. An employee who is appealing his nonselection for promotion may appeal this personnel action only on the basis of discrimination. *Taylor v. State Civil Service Commission,* 67 Pa.Commonwealth Ct. 594, 597 n. 3, 447 A.2d 1098, 1099 n. 3 (1982). The employee bears the burden in such an appeal. *See* 4 Pa.Code § 105.16.

Director replied to these letters, in part, as follows: "The material which you forwarded to me will be included in your appeal folder since it basically relates to the appeal request which you previously filed with this agency...."

However, on April 18, 1985, the Commission dismissed Pannacci's appeal without a hearing because he had "not indicated acts which, if proven, would constitute discrimination, although requested to do so." That dismissal was timely appealed to this Court.

This Court subsequently vacated the Commission's dismissal order and remanded the matter for a hearing on the issue of whether the Appointing Authority violated Section 905.1 of the Civil Service Act (Act),[2] 71 P.S. § 741.905a (prohibition against discrimination), on the basis that Pannacci's letter of April 1, 1985, contained sufficient additional information and allegations to comply with Commission regulation 105.12, 4 Pa.Code § 105.12, to prevent a dismissal of the appeal without a hearing. *See Pannacci v. State Civil Service Commission, (Pannacci I)* 101 Pa.Commonwealth Ct. 602, 516 A.2d 1327 (1986). This Court framed the issue before the Commission as whether:

the Appointing Authority advertised an intent to use one type of promotion process and then used a different one, or if its posted notice was misleading or upon inquiry an applicant was in fact misled.

*Id.,* 101 Pa.Commonwealth Ct. at 609, 516 A.2d at 1330. The Commission held a hearing and on July 14, 1988 it issued an order dismissing Pannacci's appeal holding that the Appointing Authority did not discriminate against him in violation of the Act.

On appeal here, Pannacci contends that the Commission's findings are not supported by substantial evidence. First, he contends that substantial evidence in the record shows that he was deliberately misled into applying for the promotion by a method which the Appointing Authority did not intend to use. This is simply not so. An examination of the

2. Act of August 5, 1941, P.L. 752, *as amended.* Section 905.1 was added by Section 25 of the Act of August 27, 1963, P.L. 1257.

notice itself clearly indicates that *both* the civil service list *and* promotion without examination were options available to the Appointing Authority in making its appointment. The notice stated:

This position is in the classified service and is posted in accordance with Section 501 of the Civil Service Act. Options available to fill the position include *Civil Service lists*, transfers, demotions, reinstatements, reassignments and *promotion without examination.*

*HOW TO APPLY*

Interested and qualified applicants must submit the following *under the 501 Promotion Without Examination criteria:*

1. A completed Civil Service Application (SCSC 1, 1–A, and 1–B).

2. Copies of the last three (3) regular/annual Performance Evaluation Reports.

*If currently on the Civil Service list for this position submit a bid form only if interested in applying.*[3] Applicants who fail to submit all required completed documents by 12:00 Noon on on [sic] January 21, 1985, the closing date of this announcement will be disqualified. Applications received after the closing date will not be accepted. Send completed application materials to:

Richard M. O'Dea, Rn, M.S.
Assistant Director of Nursing
Clarks Summit State Hospital
RT # 3, Box 15
Clarks Summit, Pa. 18411

For further information, contact Mr. Richard O'Dea, at Extension 340.

THIS VACANCY NOTICE IS NOT TO BE REMOVED FROM POSTING PRIOR TO 12:00 Noon, January 21, 1985." (Emphasis added.)

3. We wish to note that at oral argument, counsel for Pannacci argued that the posted notice did *not* include the civil service list as a method for application, and as support for his position relied on statements in *Pannacci I* which were taken entirely out of context. Such conduct is ill received by this Court.

4 Pa.Code § 95.7(b) provides that several different methods are available to an appointing authority which is filling vacancies. There is nothing in the regulation or the Act to suggest that an appointing authority is precluded from using different methods simultaneously.

Only two applications were received by the Appointing Authority for the promotion, those of Pannacci and Yadouga. The testimony of Mr. Richard O'Dea (O'Dea), an individual involved in the selection process, supports the Commission's finding that Pannacci was considered for the promotion, even though he applied by the promotion without examination process. O'Dea also testified that Yadouga was selected simply because she was the better qualified candidate due to her extensive experience in retail pharmacy. (N.T. 185–187).

Pannacci argues that Yadouga's experience was simply a pretext to justify his nonselection. He further contends that her only qualifications were that she had been a retail pharmacist, and that the Appointing Authority failed to explain the relevance of retail pharmacy experience in a hospital pharmacy. O'Dea testified, however, that Yadouga had been named acting Chief Pharmacist of the Hospital in 1984. Additionally, O'Dea testified that he had had the opportunity to observe the work performance of both candidates on a daily basis and, in his opinion, Yadouga had superior supervisory, planning and organizational experience.[4] Moreover, Yadouga's retail experience had spanned a period of fifteen years and included supervisory experience in a large pharmacy where she directed a staff of twenty people. Thus, this Court does not believe the Commission erred in deciding that Pannacci's nonselection was not based upon impermissible factors. There was, clearly, substantial evidence adduced to support the Commission's decision.

4. It is the duty of the Commission, and not this Court, to resolve questions of credibility and to weigh the evidence. *Laurito v. Department of Transportation,* 62 Pa.Commonwealth Ct. 406, 436 A.2d 1236 (1981).

Pannacci also contends that the Commission erred in finding that he was considered for the promotion. Pannacci bases this argument on the contention that O'Dea, the Department's only witness, admitted to playing no role in the promotion selection proceedings. Again, however, this Court finds Pannacci's allegation to be meritless. O'Dea testified on direct and cross examination that both he and Dr. Kline selected Yadouga,[5] and that he and Dr. Kline considered the applications of Pannacci and Yadouga as well as their personnel files and performance histories. (N.T. 181–187, 209–210). Pannacci argues that O'Dea admitted in previous testimony before the Pennsylvania Labor Relations Board (PLRB) that he did not participate in the decision to promote Yadouga. First, we note that credibility matters are for the Commission to determine, see supra n. 4. Second, we have reviewed the testimony and believe that when O'Dea made that statement, he was referring to the selection of Yadouga as *temporary* Chief Pharmacist and not promotion to the permanent position.

■ Pannacci also contends that because he was never afforded an interview, procedures set forth in the position vacancy notice were violated. The relevant portion of that notice provided:

SPECIAL—501 Promotion Without Examination Selection Criteria:

1. Only Clarks Summit State Hospital Employes with PERMANENT CIVIL SERVICE STATUS will be considered.

2. Must be able to obtain the Unqualified Recommendation for Promotion signed by the present supervisor upon request.

3. Meritorious service will be evaluated by *Performance Evaluation Reports*—overall average score of the last three (3) *regular* /annual reports. (Emphasis in original.)

5. It appears that the selection did have to be ratified by the Appointing Authority's Superintendent.

4. Seniority will be evaluated by *Length of Service* in qualifying Civil Service classified position. (Emphasis in original.)

*Persons who emerge as 'most qualified' based on the preceding promotion criteria will be interviewed, if approved by the Civil Servcie Commission.* (Emphasis added.)

Pannacci simply misinterpreted the notice provision. The posting provides for an interview only where one person, of several candidates, emerges as the "most qualified" under the "Promotion Without Examination procedures." Here, however, Pannacci was the *only* candidate who applied for the position by this method; hence, no interview was necessary. Yadouga, of course, applied through her position on the civil service list and, therefore, there was no need to conduct interviews to determine a "winner" under the "501 Promotion Without Examination Procedure."

▮ Pannacci also contends that the Commission ignored unrebutted evidence in the record that the Appointing Authority had advance plans to refuse him the promotion. He supports this contention by referring to the lower performance ratings given to him by the Appointing Authority in previous years. We hold that these "lower ratings" only serve to uphold the Commission's decision. Moreover, the alleged statement by Dr. Kline referred to by Pannacci in his brief is absolute hearsay, which was properly objected to by the Appointing Authority's counsel at the hearing and, therefore, is inadmissible and will not be considered. *Walker v. Unemployment Compensation Board of Review*, 27 Pa.Commonwealth Ct. 522, 367 A.2d 366 (1976).[6]

Having reviewed all of Pannacci's arguments, we believe the Commission committed no error in holding that the Appointing Authority did not violate Section 905.1 of the

---

**6.** The alleged statement made by Dr. Kline was that:
[Pannacci] may win this time, but we have a growing personnel file on him. We have a newly hired female pharmacist who can be groomed for promotion.

Act and that it had an adequate job-related reason for its selection of Yadouga for promotion.

Accordingly, we affirm the order of the Commission.

## ORDER

NOW, June 15, 1989, the order of the State Civil Service Commission in the above-captioned matter is hereby affirmed.